```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE R. BILLUPS,

                    Plaintiff,                    08-CV-0684C

           v.
                                                  DECISION
                                                  and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Michelle Billups ("Billups") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On March 2, 2009, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on July 17, 2009, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

BACKGROUND

Plaintiff is a 50 year old woman with an eleventh grade education. (Tr. 108, 128, 286, 195, 295) She alleges that she has been disabled since April 2, 1997 because of anemia, osteopenia, cubital tunnel syndrome and complications associated with a gunshot wound. (Tr. 104, 124) On April 8, 2003, Billups filed an application for Disability and SSI. (Tr. 104-105) Her application was denied initially on June 25, 2003. (Tr. 48-51) Plaintiff requested a hearing which was held on August 22, 2006 at which plaintiff appeared before an Administrative Law Judge ("ALJ") and was represented by counsel and a vocational expert appeared and testified. (Tr. 282-320) By decision dated November 2, 2006, the ALJ found Billups was not disabled. (Tr. 14-23) Plaintiff requested review by the Appeals Council. The decision of the ALJ became final when the Appeals Council denied review on July 18, 2008. (Tr. 4-7) Plaintiff commenced this action on September 17, 2008.

A. Medical Background

Billups presented to the emergency room 1999 and in June 2000 for excessive vaginal bleeding and urinary tract infections. (Tr. 187, 188) On April 30, 2001 Billups again sought treatment at the emergency room after slipping and falling down ten stairs causing pain to her lower back and right hip. (Tr. 185-86) She was given Lortab for the pain,

An ultrasound image taken on February 12, 2002 showed that plaintiff had bilateral ovarian cysts with small amount of fluid in the adnexal regions, (Tr. 173) Billups was diagnosed with painful ovarian cysts and dysmennorhea. (Tr. 183)

Billups was admitted to the Erie County Medical Center on September 30, 2002 for a hysterectomy to treat persistent endometrial hyperplasia. (Tr. 158) The operation went well and she was discharged in good condition on October 3, 2002. (Tr. 158)

On October 22, 2002, Billups presented to the emergency with complaints of lower abdominal pain. (Tr. 181) She was diagnosed with cystitis and directed to increase fluids and directed to take Tylenol as needed and prescribed an antibiotic. (Tr. 181)

In response to plaintiff's complaints of hip pain and limitation of movement, an x-ray image was taken on February 28, 2003. (Tr. 172) The image showed no evidence of acute fracture or dislocation. (Tr. 172)

An independent medical examination of plaintiff was conducted on June 11, 2003. (Tr. 189-192) Dr. Christine Holland assessed plaintiff's chief complaints of anemia, left hip problems associated with a gunshot wound sustained in 1993 and asthma. Billups reported that she was able to cook three days a

week and cleans two days a week. She is able to shop and take care of her own daily care needs. (Tr. 190) She had a normal stance and gait and did not need any assistance getting on and off the examination table. (Tr. 190) Dr. Holland did find that plaintiff had good range of motion of the left hip but she had a depressed oval area of six centimeters at the head of the hip. Plaintiff experienced pain when the area was abducted. (Tr. 191) The range of motion is normal but does cause pain. Dr. Holland concluded that plaintiff had "mild limitations to prolonged standing, twisting, heavy lifting and repetitive use of the left lower extremity." (Tr. 192)

A Physical Residual Functional Capacity report was completed on June 24, 2003 which found that plaintiff could occasionally life or carry up to 20 pounds, frequently lift or carry 10 pounds, stand or walk about six hours in an eight hour day, sit about six hours in an eight hour day and is limited in the lower extremities with pushing and pulling. (Tr. 194) Plaintiff still had multiple pellets over the promixal femur but she still had good range of motion of the left hip with pain on adduction. (Tr. 194)

Plaintiff was referred to the Electrodiagnosis Laboratory at the Erie County Medical Center on September 12, 2005 to treat complaints of numbness and tingling in her left hand and all

4

fingers of the left hand. (Tr. 217) The elecrodiagnositic findings were consistent with left cubital tunnel syndrome (left ulnar entrapment neuropathy at the elbow, symptomatic) and right lunar entrapment neuropathy at the elbow, asymptomatic. (Tr. 217) Billups was advised to do full range of motion exercises for five minutes before bed time and that there was no need for follow up in neurology. (Tr. 224)

Dr. Anil Chandel of Erie County Medical Center wrote a letter dated October 4, 2005 indicating that Billups had a diagnosis of "Entrapment Neuropathy" which limited her ability to work her arms. (Tr. 199) The medical records show that plaintiff began physical therapy on April 4, 20006 with the goal to improve ambulatory tolerance. (Tr. 202) Plaintiff continued to take Advair for treatment of asthma and iron for anemia. (Tr. 210-211)

A bone density test was performed on January 18, 2006 which revealed bone mineral densities of the lumbar spine and the left hip. Based on this data, Dr. Chandel concluded that plaintiff was "felt to be osteopenic." (Tr. 214)

B. <u>Non-Medical Background</u>

Plaintiff's prior work experience included work on an assembly line in a chocolate factory, cleaning work in residential and offices, and as a cook. (Tr. 125, 134) Billups

5

is able to take care of herself, do the shopping but spends her days watching television and going to church. (Tr. 146) She can do the laundry but has a lifting restriction of 20 pounds. (Tr. 298)

Plaintiff testified that she was accidentally shot in the leg in 1992. (Tr. 288) She worked on and off for a cleaners in the 1990s but had to take time off to care for her sick parents. (Tr. 289) In 2004, Billups worked part time for a janitorial service and did some babysitting. (Tr. 290) In addition, she did some work for a nursing home. (Tr. 291) During this time, she experienced swelling of her feet from standing all day, (Tr. 294) and had pain in her back and left hip. (Tr. 295) Billups testified that she would experience pain within 20 or 30 minutes of sitting or standing. (Tr. 296) Plaintiff acknowledged a history of cocaine use but testified that she had not used illegal drugs since entering treatment in 1995. (Tr. 287-288)

Plaintiff was experiencing a tingling sensation in her hands causing her to drop objects. (Tr. 301) Medical tests indicated that she had entrapment neuropathy. (Tr. 300) No surgery or braces were recommended to plaintiff for treatment. (Tr. 302) At the time of the hearing, plaintiff was taking Tylenol number 4 for pain, Neurontin for swelling and Ambien to aid sleep. (Tr. 305) She also took Advair for asthma, Prilosec for indigestion

6

and iron for her blood iron level. (Tr. 304-306).

A vocational expert, Peter Manzi, testified at the hearing. (Tr. 282-320) Given the hypothetical of a person the same age, and education level as plaintiff with the residual functional capacity to perform a full range of light work who should avoid concentrated exposure to extremes of temperature, humidity, dust, fumes and gases and with no prior work experience, Mr. Manzi testified that such a person could do some light, unskilled, and some sedentary skilled work such as counter clerk, photofinishing and furniture rental clerk. (Tr. 313-314) In addition, Mr. Manzi testified that said individual could also do sedentary work such as surveillance system monitor or carload operator. (Tr. 316).

## DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's

7

physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits her ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform her past work. If she is not, the fifth and final inquiry is whether the claimant can perform any

8

other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure. In his decision dated November 2, 2006, the ALJ found that (1) although plaintiff had worked since her alleged onset date, her efforts did not amount to substantial gainful activity within the meaning of the regulations; (2) plaintiff suffered from status post gunshot wound in the left leg, osteopenia, and left cubital tunnel syndrome; (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; (4) had the residual functional capacity to "lift and carry up to twenty pounds occasionally and ten pounds frequently, sit up to six hours and stand and/or walk about six hours out of an eight hour workday; that she can occasionally kneel, squat, and climb; she should avoid concentrated exposure to weather extremes, dust, fumes, and gasses; she should avoid heights and dangerous machinery; and that she can occasionally use her left hand for gross and fine motor skills." (Tr. 20)

Plaintiff alleges that the ALJ did not have substantial evidence to support his finding that plaintiff was not disabled.

9

She contends that the ALJ failed to (1) fully develop the medical record with regard to plaintiff's residual functional capacity as determined by her treating physician; (2) improperly relied on the state's medical examiner to establish plaintiff's residual functional capacity; and (3) failed to give adequate weight to plaintiff's subjective complaints of pain. Finally, plaintiff objects to the vocational expert testimony because the hypothetical posed to the expert regarding plaintiff's physical capacity was not based on substantial evidence.

I find that there is substantial evidence to support the ALJ decision. First, plaintiff asserts that the ALJ did not fulfill his duty to investigate the facts by making adequate attempts to get all the medical records. Plaintiff notes that there is no evidence that the Social Security Administration sought Dr. Chandel's records or opinion as plaintiff's primary physician. Plaintiff argues that the ALJ should have sought clarification from Dr. Chandel of the plaintiff's limitation in her arms or lower extremities or clarification of his treatment notes as they were mostly illegible.

The ALJ has the responsibility to "make every reasonable effort to help [claimants] get medical records from . . . treating sources." 20 C.F.R. § 416.912(d) and to "request medical source statement about what you can still do despite your

impairment(s) . . ." 20 C.F.R. § 404.913(b)(6). Here the obligation was met. The ALJ need only re-contact a physician when the evidence the Commissioner receives from the source is inadequate for the Commissioner to determine whether plaintiff is disabled. 20 C.F.R. § 416.912(e).

The ALJ had plaintiff's complete medical history. There were no gaps in the record nor ambiguity or conflicts. By letter dated February 16, 2006, the ALJ requested all medical records pertaining to Dr. Chandel's treatment of plaintiff from June, 2005 to date. (Tr. 204) The record contains Dr. Chandel's records dated July, 2005 through February 22, 2006. (Tr. 206-215) These records included imaging records, medications prescribed and physician notes from examinations. Where there are no obvious gaps in the record and where the ALJ possesses the complete medical history, the ALJ is under no obligation to seek additional information before rejecting a claimant's application. Rosa v. Calahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)

Next, plaintiff argues that the ALJ wrongly relied on the state examiner's residual functional capacity analysis because he is not a physician and the opinion dates from a time period prior to the onset date of disability. While the ALJ did mention the report of the state examiner in his opinion, it is not the sole basis for the conclusion regarding plaintiff's residual

functional capacity. The ALJ relied on several sources including the opinion of the consultative examiner, Dr. Christine Holland, plaintiff's treating physician, Dr. Chantel, Dr. Boucher and Dr. Kolade as well as electrodiagnostic results and physical therapy notes from April 2006. In addition the ALJ pointed out that plaintiff's own testimony supports this conclusion in which she stated that her physician's limit her to not lift over 20 pounds. (Tr. 22, 298)

Plaintiff also contends that the ALJ did not give adequate weight to plaintiff's statements regarding her symptoms. The ALJ's determination that plaintiff's characterization of her limitations was exaggerated is supported by substantial evidence in the record. The ALJ noted plaintiff's poor work history, history of drug abuse and conservative medical treatment record in making his credibility finding. While x-rays did reveal multiple pellets over the femur but she still had good range of motion of the left hip, the leg was otherwise normal, and no clinical findings showed any loss of motion, reflexes or weakness in the legs. The ALJ conclusion regarding plaintiff's residual functional capacity is also consistent with the medical evidence pertaining to the diagnosis of entrapment neruopathy. (Tr. 217) Billups was advised to do exercises but that there was no need for follow up in neurology. (Tr. 224)

12

Finally, plaintiff argues that because the residual functional capacity determination was erroneous, the hypothetical basis of the vocational expert's testimony is not valid. As stated above, the ALJ properly relied on the medical evidence in the record to establish a residual functional capacity that takes into account plaintiff's limitations as established in the records. This residual functional capacity was presented to the vocational expert in addition to plaintiff's age, educational background and work experience to determine whether there were jobs existing in significant numbers in the national economy that plaintiff could perform. The ALJ's hypothetical incorporated the additional limitation of only occasional hand use as well as other limits on kneeling, squatting, climbing, exposure to heights, machinery and environmental limitations. (Tr. 313)

Plaintiff's reliance on Franklin v. Apfel, 8 F.Supp. 227, 234 n.7 (W.D.N.Y. 1998) for the proposition that there must be a significant number of jobs either in the region where plaintiff lives or in several regions of the country is misplaced. Mr. Manzi did note that the number of local jobs was 270 positions for photofinishing and furniture rental clerk and 110 local positions for surveillance system monitor. (Tr. 314) Unlike the plaintiff in Franklin where the closest job was over 60 miles away, Plaintiff did not present evidence that these positions are

not located near where she lives.

CONCLUSION

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
   MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         March  1 , 2010